# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARTELL FLIPPINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19-cv-00517-NJR |
| ) | |
| K. KINK, ) | |
| WEXFORD HEALTH SOURCES, ) | |
| V. SHAH, ) | |
| F. AHMED, ) | |
| DR. RITZ, ) | |
| S. STOVER, ) | |
| L. CUNNINGHAM, ) | |
| J. BALDWIN, and ) | |
| S. BENTON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

On May 16, 2019, in addition to his Complaint (Doc. 1), Plaintiff Martell Flippins, an inmate of the Illinois Department of Corrections ("IDOC"), filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2). Pursuant to 28 U.S.C. § 1915A, an Order was entered on May 17, 2019, setting forth the following claims: that Defendants have exhibited deliberate indifference to a serious medical need regarding the treatment of Flippins's inguinal hernia and associated symptoms in violation of the Eighth Amendment (Count 1); that Wexford and employees have denied him medication and falsified medical records (Count 2); and that he has been discriminated against in violation of the Fourteenth Amendment (Count 3). (Doc. 8, p. 3). The Court dismissed

1

without prejudice Counts 2 and 3, denied Flippins's request for a temporary restraining order, and directed Defendants to respond to his request for a preliminary injunction (Doc. 8, p. 7; Doc. 16). Defendants Wexford, Baldwin, Cunningham, Kink, and Benton filed responses on June 10, 2019 (Doc. 34) and June 14, 2019 (Doc. 39).

The Court began a hearing on the motion on June 17, 2019, but had to end the hearing because Dr. Shah did not have the medical records available to consult, and because the video-conference system malfunctioned. After numerous attempts at rescheduling, the Court continued the hearing on July 26, 2019.[1]

## BACKGROUND

The Complaint and Motion for Preliminary Injunction allege that Flippins was diagnosed with an inguinal hernia in his groin area in early 2017. (Doc. 1, p. 8). In June 2017, Dr. Ahmed recommended that Flippins be referred for surgery, but that recommendation was subsequently denied by both Dr. Ahmed himself and Dr. Ritz. (Doc. 1, p. 26; Doc. 2, p. 3). Despite filing multiple grievances and writing letters requesting surgery, Flippins continues to be treated only by medication, which he claims is ineffective and has caused additional health problems. (Doc. 2, p. 3; Doc. 1, pp. 9, 14). Flippins alleges that Dr. Ritz, Dr. Ahmed, Dr. Shah, and Nurse Practitioner Stover have

---

[1] The hearing was first interrupted and forced to reschedule for July 18, 2019, due to technical difficulties with the video conference equipment at the IDOC facilities where Plaintiff and witness for Defendant Wexford, Dr. Shah, were located. (Doc. 43). Wexford then filed a motion to continue the hearing a different date, because witness, Dr. Shah, would be unavailable at this date, which the Court granted. The Court rescheduled the hearing for August 14, 2019. (Doc. 48). Flippins then filed a motion to change the date of the hearing, as he is scheduled to be paroled August 9, 2019, and no longer will be in custody at Lawrence Correctional Center. The Court granted the motion and scheduled the hearing for July 26, 2019. (Doc. 56).

2

exhibited deliberate indifference to his worsening hernia and associated symptoms by denying treatment for non-medical reasons, delaying treatment, and persisting in a course of treatment known to be ineffective. (Doc. 2, p. 3).

Flippins alleges that because of the numerous grievances, letters, and complaints, IDOC Director Baldwin (Doc. 1, pp. 8-9; Doc. 2, p. 4), Warden Kink (Doc. 1, pp. 16, 18; Doc. 2, p. 4), Administrative Review Board Member Benton (Doc. 1, pp. 8-9; Doc. 2, p. 4), and Health Care Unit Administrator Lorie Cunningham (Doc. 1, pp. 16, 18; Doc. 2, p. 3), know that Flippins is receiving constitutionally inadequate medical care, but have failed to intervene on his behalf. (Doc. 1, p. 8). This unconstitutional medical care results from a policy, custom, or widespread practice adopted by Wexford. (Doc. 1, p. 8, 16-19; Doc. 2, p. 3). Specifically, Wexford has implemented a cost-cutting policy and/or practice of denying all requests for surgical repair of hernias despite medical need and will not pay for surgery until the hernia gets to the "worst stage." (Doc. 2, p. 3).

Since receiving the diagnosis, Flippins claims that the hernia has grown in size, and the symptoms have worsened, making it difficult for him to sleep, eat, stand, and do normal daily activities. (Doc. 1, pp. 8-9, Doc. 2, p. 4).

In their responses, (Docs. 34 and 39), Defendants argue that the medical records[2] show that Flippins is receiving appropriate and regular treatment by medical staff at Lawrence and therefore he has not demonstrated that Defendants have been deliberately

---

[2] Medical records were filed with the Court by Defendants on June 12, 2019 (Doc. 35-2), and again on June 14, 2019, along with Defendants Baldwin, Benton, Cunningham, and Kink's Amended Response. (Doc. 39-2).

indifferent to his serious medical condition. (Doc. 34, p. 3; Doc. 39, p. 2). Neither has Flippins established that he will suffer irreparable harm without surgery. Again, according to the medical records, his inguinal hernia has been successfully managed for over two years. (Doc. 34., p. 4; Doc. 39, p. 5).

Wexford also argues that Flippins has not offered any evidence to show that Defendants have undertaken a course of treatment that is a significant departure from accepted professional standards or practices. (Doc. 34, p. 3). He only claims that Defendants have not allowed him to undergo surgery to fix the hernia, which is not evidence of deliberate indifference. Allowing Flippins to decide his own medical treatment, an unnecessary and elective surgery, and overruling the judgment of medical professionals would create a precedent that Defendants' medical judgment cannot be relied on when treating inmates. *Id.* at p. 5. Ordering surgery, which is intrusive by nature, would have an adverse impact on the operation of the criminal justice system.

## ANALYSIS

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;

4

- no adequate remedy at law; and
- irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## Discussion

During both recent hearings, Dr. Shah testified that because of the complications that can result, he does not recommend hernia surgery unless absolutely necessary. He also testified that although in October 2017 Dr. Ahmed initially thought a surgical evaluation might be appropriate, after collegial review, Dr. Ahmed and Dr. Ritz

5

determined to proceed with an alternative treatment plan of continuing to monitor Flippins and to treat him with a hernia belt and pain medicine. *See* Doc. 39-2, p. 54. The medical records submitted by Defendants (Doc. 39-2) further indicate that all of the medical providers who have seen Flippins agree that the hernia was and, as of May 22, 2019, is reducible. *See* Doc. 39-2, p. 52.

Flippins testified that he has been seen by medical staff at Lawrence over ten times since first complaining about pain in his groin area in January 2017 and that his last medical appointment was in June 2019 for a prescription refill. He also confirmed that has received pain medication, muscle rub, fiber supplements, and a hernia belt for treatment.

Flippins testified that the pain caused by the hernia makes it difficult for him to sleep at times, stand for long periods of time, and exercise, and that he has had trouble receiving refills of his pain medication.[3] He also alleged that the pain medication he has been taking has caused damage to his liver because of a low platelet count result from labs taken in 2017 and that Dr. Shah has told him that the amount of pain medication he was taking was not safe. When questioned, Dr. Shah testified that pain medication can cause liver problems, but that he had additional labs performed to ensure sure that there were no problems with Flippins's liver.

---

[3] Flippins also alleged being denied medication in his Complaint against "Wexford and employees." This claim was dismissed in the Merit Review Order, however, because he failed to allege necessary supporting facts and did not demonstrate that the alleged wrongdoers acted pursuant to an unconstitutional policy or custom. *See* Doc. 8, p. 6.

In light of the evidence presented at the recent hearing, Flippins has not met the high burden that is necessary to obtain a preliminary injunction. The medical records and testimony show that Flippins has been given continuous medical treatment since first complaining about pain in his groin area in 2017, and he was seen by medical as recently as last month. The Court finds no evidence of deliberate indifference that would warrant a preliminary injunction at this time. Further, despite claiming that he believes his pain medication has caused liver damage, Flippins has failed to demonstrate how he will suffer irreparable harm if he is not granted immediate surgery to treat his hernia.

## Conclusion

For these reasons, Flippins's motion for preliminary injunction (Doc. 2) is **DENIED.**

**IT IS SO ORDERED.**

DATED: 7/30/2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**