IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARTELL FLIPPINS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WEXFORD HEALTH SOURCES, INC., DR. VIPIN SHAH, DR. STEPHEN RITZ, and SARA STOVER,**<br><br>**Defendants.** | **Case No. 3:19-CV-517-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Martell Flippins, a former inmate at Lawrence Correction Center ("LCC") within the Illinois Department of Corrections ("IDOC"), filed this lawsuit under 42 U.S.C. § 1983 alleging that Defendants Wexford Health Sources, Inc. ("Wexford"), Dr. Vipin Shah, Dr. Stephen Ritz, and Nurse Practitioner ("NP") Sara Stover were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (Doc. 1). The matter is now before the Court on the Motion for Summary Judgment filed by Defendants. (Doc. 178). For the reasons set forth below, the Court grants Defendants' motion.

## Background

The following material facts are undisputed for the purpose of the instant summary judgment motion. In January 2017, while incarcerated at LCC, Flippins was diagnosed with a reducible inguinal hernia after presenting with a painful mass in the

right side of his groin area. (Doc. 179-1, p. 18). An inguinal hernia is a protrusion of internal abdominal tissue within the inguinal canal through a weakness in the canal. (Doc. 179-3, p. 47). A reducible hernia is one where the protruding abdominal contents can be pushed back into the abdominal cavity, while a non-reducible hernia is one where the protruding abdominal contents cannot be pushed back into the cavity. (*Id.* at pp. 19-20). At the time of his diagnosis, Flippins reported that his hernia pain was an 8 out of 10 and that his hernia was roughly the size of a golf ball. (Doc. 179-1, p. 16).

On February 1, 2017, Flippins attended a nurse sick call, where he was provided with stool softeners and fiber tablets and referred to a medical doctor. (*Id.* at p. 20). He was also advised not to overexert himself during his bowel movements to reduce any pain his hernia was causing while using the restroom. (*Id.*). By March 2017, when his pain persisted, Flippins was prescribed 375 mg tablets of naproxen for 60 days. (*Id.* at p. 94). He was eventually issued a hernia belt to hold his hernia in place and manage his discomfort. (*Id.* at p. 26).

By June 1, 2017, Flippins rated his pain slightly lower, at a 7 out of 10, and he described it as throbbing and intermittent. (*Id.* at p. 28). Medical staff then provided Flippins with ibuprofen 200 mg and acetaminophen 325 mg to be taken over the next three days. (*Id.*). Twenty days later, on June 21, 2017, Flippins described his pain as constant, having returned to an 8 out of 10. (*Id.* at p. 32). He was ultimately referred to see a doctor again, and the doctor refilled his naproxen prescription. (*Id.* at p. 98). To this point, Flippins had not yet encountered Defendants.

On October 12, 2017, Flippins again saw a nurse about his hernia, and he described his pain as throbbing and as an 8 out of 10. (*Id.* at p. 35). He also described pain when using the restroom. (*Id.*). Flippins was referred to see a medical doctor again. (*Id.*). Dr. Faiyazz Ahmed saw Flippins and referred him for a surgical evaluation on October 19, 2017. (*Id.* at 80). If it was determined that surgery was not appropriate, Dr. Ahmed's recommended alternative course of treatment included continuing to monitor Flippins, instructing him to avoid heavy lifting, and suggesting the use of a hernia belt and analgesics. (*Id.*).

The following day, October 20, 2017, Dr. Ahmed's surgical referral was denied by Defendant Dr. Stephen Ritz. (*Id.* at p. 81). Dr. Ritz was employed as the Utilization Management Medical Director and performed collegial reviews on behalf of Defendant Wexford (Doc. 179-4, pp. 7-8). At all times relevant to the present action, Defendant Wexford was a private medical corporation that contracted with the IDOC to provide medical services to inmates held in Illinois prisons, including LCC. (Doc. 179-6, pp. 7-8). The collegial review process required Dr. Ritz to review requests for medical care, including surgeries, submitted by medical professionals on behalf of inmates. (Doc. 179-4, pp. 7-8).

After discussing Flippins's condition with Dr. Ahmed, Dr. Ritz determined that Dr. Ahmed's alternative treatment plan was more appropriate at that time. (Doc. 179-1, pp. 36, 81). Dr. Ahmed's alternative treatment plan was ultimately followed, and he prescribed Flippins 500 mg tablets of acetaminophen and naproxen, as well as an analgesic balm for body aches, in late October and early November 2017. (*Id.* at pp. 37,

102). Flippins was supposed to receive another hernia belt in December 2017, but his medical records indicate that he refused to accept it. (*Id.* at p. 44).

On May 14, 2018, Flippins was seen by Defendant NP Sara Stover for the first time. (*Id.* at p. 52). NP Stover noted that Flippins reported his hernia was painful and sometimes had to be manually pushed back inside his body; however, she also observed that his hernia remained fully reducible. (*Id.*). The plans in NP Stover's notes indicate that Flippins would receive 500 mg Tylenol tablets to be taken twice a day, fiber tablets, and stool softeners, noting that he had a hernia belt already. (*Id.*). These medications were prescribed for a period of 12 months. (*Id.*). NP Stover then advised Flippins to follow up as needed. (*Id.*).

Nine months later, on February 21, 2019, Flippins saw Defendant Dr. Vipin Shah about his inguinal hernia. (*Id.* at p. 65). Notably, Dr. Shah had two unrelated encounters with Flippins on December 1, 2018, to treat a rash and on April 25, 2019, to perform an annual physical. (*Id.* at pp. 8-9, 60). During the February 2019 appointment, Dr. Shah's notes indicate that Flippins's vital signs were normal, he exhibited no signs of abdominal tenderness, and his hernia remained fully reducible. (*Id.* at p. 65). Based on Dr. Shah's examination of Flippins, Dr. Shah advised him to continue his medication for pain and constipation, to increase his fluid intake, to avoid lifting weights, and to follow up with him if needed. (Doc. 179-3, p. 40).

Flippins thereafter sought medical care with a nurse on May 20, 2019, where he reported that his pain was an 8 out of 10, his pain was intermittent and stabbing, and his condition had persisted for over two years. (Doc. 179-1, p. 73). At that appointment, the

nurse noted no obvious signs of discomfort. (*Id.*). Two days later, Flippins was seen for a second time by NP Stover. (*Id.* at p. 77). NP Stover's notes demonstrate that Flippins reported that his inguinal hernia had become more painful, and he felt the Tylenol tablets he had been given were not as effective as they had once been. (*Id.*). In response, NP Stover prescribed additional 500 mg Tylenol tablets to Flippins, as well as 600 mg tablets of ibuprofen. (*Id.*). This was a higher dosage of ibuprofen than Flippins had received previously. (*Id.*). She again advised Flippins to follow up as needed. (*Id.*).

Flippins filed this lawsuit on May 16, 2019, alleging an Eighth Amendment deliberate indifference claim against Defendants. (Doc. 1). Specifically, Flippins claims that Defendants Dr. Ritz, Dr. Shah, and NP Stover denied his requests for surgical repair for non-medical reasons, ignored his complaints about severe pain and worsening symptoms, and otherwise failed to treat his hernia. (Doc. 8, p. 4). Flippins further alleges that Defendant Wexford's collegial review policy is one it utilizes to refuse medical treatment to save costs. (Doc. 1, pp. 16, 18; Doc. 2, p. 3).

Defendants now move for summary judgment on Flippins's claims (Doc. 178).

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining whether a genuine issue of fact exists, the Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022). Once the moving party sets forth the basis for summary judgment, the burden shifts to the nonmoving party who must go beyond mere

allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

## DISCUSSION

"The Eighth Amendment proscribes 'deliberate indifference to serious medical needs of prisoners' amounting to 'the unnecessary and wanton infliction of pain.'" *Arce v. Wexford Health Sources, Inc.*, 75 F.4th 673, 678-79 (7th Cir. 2023) (quoting *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022)). "Deliberate indifference requires '[s]omething more than negligence or even malpractice.'" *Id.* at 679 (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must show: (1) he suffered from an objectively serious medical condition; and (2) the individual defendant was deliberately, that is subjectively, indifferent to that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019).

A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (citation omitted). It is not necessary for a condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to

a *substantial* risk of *serious* harm") (internal quotation marks omitted) (emphasis added). Defendants do not dispute that Flippins had a serious medical condition, so the Court turns to the subjective prong.

Prevailing on the subjective prong requires a plaintiff to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual knew of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles*, 771 F.3d at 409. The defendant must have had "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." *Ayoubi v. Dart*, 724 F. App'x 470, 474 (7th Cir. 2018). Proving deliberate indifference "is a high bar 'because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)).

Moreover, treatment that is "based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016). When a prison official claims to have exercised their professional judgment, that individual lacks a "sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment." *Id.* A difference of

opinion among medical professionals is not enough to substantiate a claim of deliberate indifference. *Id.*

Dr. Ritz argues that he was not deliberately indifferent to Flippins's medical condition because cost considerations did not factor into his evaluation of Flippins's surgical referral request. (Doc. 179, ¶ 34). Instead, Dr. Ritz maintains that he recommended Dr. Ahmed's alternative treatment plan for Flippins based on his independent clinical judgment. (*Id.*).

The Court agrees with Dr. Ritz. Flippins claims that Dr. Ritz denied his requests for surgical repair for non-medical reasons, ignored his complaints about pain, and otherwise failed to treat his hernia. (Doc. 1, pp. 8-9, 26; Doc. 2, p. 3). There are three types of hernia situations: "(1) a hernia that is strangulated, which is a medical emergency mandating surgery; (2) a hernia that is reducible yet so painful or debilitating that surgery is required; and (3) a hernia that is reducible and, given the dangers and risks inherent in any operation, can be treated through non-surgical means." *Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006). There is no evidence that Flippins's hernia was strangulated. Therefore, Dr. Ahmed and Dr. Ritz were left to determine whether his reducible hernia required surgery.

Dr. Ritz explained that pain is subjective, and pain evaluations are typically squared with a physician's objective findings, such as the normalcy of the patient's vital signs and day-to-day function. (Doc. 179-4, p. 44). For example, Dr. Ritz noted that Flippins presented at his appointments with normal vital signs. (*Id.* at pp. 48-49). Dr. Ritz also explained that reducible hernias typically are not painful, but Flippins's pain would

have been evaluated and considered by his physician. (*Id.* at pp. 28-29, 43). Dr. Ahmed and Dr. Ritz corresponded and, given the findings of Flippins's medical providers and the reducibility of his hernia, chose to prescribe non-surgical remedies designed to alleviate his pain. (*Id.* at pp. 60-63). The record indicates that Dr. Ritz's course of treatment for Flippins was grounded in professional judgment, and that Flippins was afforded adequate, reasonable medical treatment. *See Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002) (determining that inmates are entitled only to "adequate medical care" under the Eighth Amendment). As to Flippins's theory that Dr. Ritz denied the surgery based on a cost-saving policy of Wexford, Dr. Ritz flatly denied, under oath, that he considered cost as a factor when determining whether Flippins's hernia repair surgery was necessary. (Doc. 179-4, p. 27). Even if Dr. Ritz had considered the cost of the procedure, consideration of cost as a factor is not inappropriate. *Doughty*, 433 F.3d at 1015 (citing *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999)). Consequently, Dr. Ritz is entitled to summary judgment.

The Court also finds that Dr. Shah is entitled to summary judgment. Similar to Dr. Ritz, Dr. Shah had to determine whether Flippins's inguinal hernia required surgery. Dr. Shah articulated that, in his professional experience, there are several relevant factors for determining whether surgery is appropriate for an inguinal hernia: tenderness in the hernia or abdominal area, poor vital signs, and issues with daily activities. (Doc. 179-3, p. 20). Dr. Shah opined that surgery is not immediately appropriate when a hernia remains reducible and there is minimal evidence supporting the other factors. (*Id.* at p. 22). Dr. Shah examined Flippins's hernia on a single occasion, and his notes from that

encounter demonstrate that Flippins's vital signs were normal, he had no abdominal tenderness, and his hernia remained reducible. (*Id.* at p. 65). Based on that assessment, Dr. Shah advised Flippins to continue his medication for pain and constipation, to increase fluids, to avoid lifting weights, and to follow up if needed. (*Id.* at p. 40). According to Dr. Shah, alternative care is typically pursued prior to surgery, and the decision whether to pursue surgery is a judgment call that must be made by the clinician. (*Id.* at p. 36). Given Dr. Shah's objective assessment of Flippins and the reducibility of his hernia, Dr. Shah chose to prescribe non-surgical remedies designed to address Flippins's pain. The record indicates that Dr. Shah's course of treatment for Flippins was grounded in professional judgment. Flippins's ultimate disagreement with Dr. Shah's course of treatment provides no basis for a claim of deliberate indifference. *See Doughty*, 433 F.3d at 1013 (reasoning that "[m]ere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to support a claim of deliberate indifference).

The Court further agrees that no reasonable jury would find that NP Stover was deliberately indifferent to Flippins's medical condition. NP Stover had two encounters with Flippins. During each encounter, NP Stover examined Flippins and observed that he had a right inguinal hernia that was fully reducible in the standing petition. NP Stover explained that, in her professional judgment, pain management is more appropriate than a surgical consult when an inguinal hernia is fully reducible. (Doc. 179-5, pp. 15-16). This testimony is sufficient to find that NP Stover lacked a sufficiently culpable mental state to support a claim of deliberate indifference. *See Zaya*, 836 F.3d at 805.

When a medical professional persists in a course of treatment known to be ineffective, that behavior may supply a basis for an Eighth Amendment deliberate indifference claim. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). However, the record demonstrates that NP Stover adjusted Flippins's treatment based on his subjective complaints of pain. At Flippins's first appointment with NP Stover, she prescribed him 500 mg tablets of Tylenol, fiber tablets, and stool softeners. When Flippins continued to complain of pain a year later, NP Stover enhanced the strength of his prescription by ordering additional 500 mg tablets of Tylenol and 600 mg tablets of ibuprofen. There is simply no evidence from which a rational jury could conclude that NP Stover knowingly or recklessly disregarded an excessive risk to Flippins's health.

The Court also grants summary judgment to Wexford. In his Complaint, Flippins alleges that he was denied constitutionally adequate medical care due to Wexford's management and collegial review process. (Doc. 1, pp. 8-9). Specifically, Flippins argues that Wexford's collegial review process is intended to save on costs. Corporate entities like Wexford cannot be held liable based on supervisory liability. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). Rather, a plaintiff "must show that the violation was caused by (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978); *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017)).

Flippins has failed to offer sufficient evidence to show that any Wexford policy contributed to, caused a delay in, or caused the denial of treatment for his inguinal hernia and related pain. Flippins points to a single incident in which he was impacted by Wexford's collegial review policy. Flippins was referred for a surgical evaluation by Dr. Ahmed in October 2017, and that referral was denied by Dr. Ritz through Wexford's collegial review process. This one denial is not sufficient for the claim against Wexford to survive summary judgment. A plaintiff must offer "considerably more proof than the single incident . . . to establish both the requisite fault . . . and the causal connection between the policy and the constitutional deprivation." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985)).

Flippins additionally argues that Dr. Kushal Patel's expert opinion supports the fact that Defendants' medical decisions were blatantly inappropriate and lacked professional judgment. Dr. Patel opined that male patients who experience pain, worsening symptoms, functional impairment, or pain during reduction of the hernia should be referred for surgical evaluation, regardless of whether the hernia is reducible. (Doc. 180-4, p. 6). However, Dr. Patel's deposition testimony does not align with such a stringent rule. He testified that consistency of pain, severity of pain, and location of the hernia are factors to consider when deciding whether surgery is necessary. (Doc. 179-9, pp. 25-26). He also testified that reasonable physicians may disagree about the subjectively reported symptoms of a patient. (*Id.* at p. 48). Further, Defendants' expert, Dr. Kent Kercher, testified that reducibility of a hernia indicates that surgery is not urgent.

(Doc. 179-7, pp. 14-15). Taken as a whole, the record establishes that physicians consider a variety of factors in determining whether hernia repair surgery is appropriate. As discussed above, Defendants adequately considered Flippins's symptomology and the reducibility of his hernia when determining how to treat him.

Dr. Patel also testified that, generally, if a patient's symptoms progressively worsen and the patient wishes to pursue surgery, the patient should be referred for a surgical consultation. (*Id.* at pp. 33-34). The challenge with Dr. Patel's testimony is that inmates are entitled only to "adequate medical care" under the Eighth Amendment. *Boyce*, 314 F.3d at 888-89. Inmates are not entitled to "demand specific care" or even to "the best possible care." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 2022). The Eighth Amendment does not require that doctors keep patients pain-free. *Arce*, 75 F.4th at 681. Rather, inmates are entitled only to "reasonable measures to meet a substantial risk of harm. *Forbes*, 112 F.3d at 267. Here, the measures pursued by Defendants were reasonable. Flippins has failed to show that Defendants' decisions were "so far afield of accepted professional standards as to raise the inference that [they were] not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see Johnson v. Dominguez*, 5 F.4th 818, 825-26 (7th Cir. 2021) (summary judgment was appropriate where medical professionals declined surgery because the inmate's abdominal hernia remained reducible, had not grown significantly, and was treated conservatively with medication and an abdominal binder, despite the plaintiff's subjective reports of pain).

## CONCLUSION

For these reasons, the Motion for Summary Judgment filed by Defendants Wexford Health Sources, Inc., Dr. Vipin Shah, Dr. Stephen Ritz, and Nurse Practitioner Sara Stover (Doc. 178) is **GRANTED**.

Plaintiff Martell Flippins shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED: September 16, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**